178 F.3d 1,
UNITED STATES, Appellee,
v.
George SACKO, Defendant, Appellant.
 No. 97-2386.
 United States Court of Appeals,
First Circuit.
 Heard Jan. 5, 1999.
Decided March 15, 1999.
Order Denying Rehearing En Banc June 16, 1999.
 
 Mark J. Gardner, by appointment of the Court, for appellant.
 James H. Leavey, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, was on brief, for appellee.
 Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.
 TORRUELLA, Chief Judge.
 
 
 1
 The defendant, George Sacko ("Sacko"), was arrested in December 1996, and charged with: (1) possession of firearms by a convicted felon, and (2) possession of a silencer by a convicted felon. On July 8, 1997, Sacko pled guilty to both counts. The district court determined that Sacko was an armed career criminal under 18 U.S.C. § 924(e)(1) because of three previous Rhode Island convictions for: (1) assault with a dangerous weapon; (2) assault with intent to murder; and (3) statutory rape or, as it is described under Rhode Island General Laws, sexual assault in the third degree. Sacko was sentenced, as a level 31 Category VI offender, to 212 months imprisonment and five years of supervised release to be served concurrently on each count.
 
 DISCUSSION
 
 2
 The only issue before us is the propriety of the district court's sentencing of Sacko as an armed career criminal by virtue of his previous conviction for statutory rape under Rhode Island law. The Rhode Island statutory rape statute punishes a person over the age of eighteen who engages in sexual penetration with another person over the age of fourteen and under the age of consent, which is sixteen years of age. See R.I. Gen. Laws § 11-37-6 (1989). Under the Armed Career Criminal Act ("ACCA"), this enhancement was only proper if Sacko's conviction was for a "violent felony." 18 U.S.C. § 924(e)(1).[1] The district court determined that it was such a crime. This issue is one of law, and our review is de novo. See United States v. Meader, 118 F.3d 876, 881 (1st Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 729, 139 L.Ed.2d 667 (1998).
 
 
 3
 Section 924(e)(2)(B) defines a "violent felony" as follows:
 
 
 4
 [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that
 
 
 5
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
 
 
 6
 (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
 
 
 7
 Under Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), whether a predicate offense qualifies as a crime of violence requires a "categorical" examination of the statutory crime. Taylor considered whether the defendant's predicate offenses constituted "burglary" as defined in 18 U.S.C. § 924(e), a sentencing enhancement statute. Taylor had been convicted of "burglary" in Missouri at a time when Missouri had seven different statutes under which a person could be charged for that crime. The Supreme Court held that, rather than examining the particular circumstances of the crimes for which the defendant was convicted, a sentencing court should look only to whether the statute of conviction contained the elements of a "generic" burglary and should not inquire whether the specific crime committed was especially dangerous to others. See Taylor, 495 U.S. at 598, 110 S.Ct. 2143. The Court defined generic burglary as a crime that consists of: "unlawful and unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Id. Taylor noted that in some situations the statute of conviction may include elements beyond those of a generic burglary (e.g., entry into places other than buildings). See id. at 599-600, 110 S.Ct. 2143.
 
 
 8
 To address that issue, and other problems of interpretation of § 924(e), sentencing courts should employ a "formal categorical approach," and generally "look only to the fact of conviction and the statutory definition of the prior offense." Id. at 602, 110 S.Ct. 2143. A sentencing court may go beyond the fact of conviction in those cases where the statute encompasses both violent felonies (e.g., generic burglary) and non-violent felonies (e.g., burglary of a vehicle rather than of a building). See id. In such a situation, the sentencing court may examine the indictment or information and jury instructions in order to discern which type of crime the offender was convicted of perpetrating. See id. The Taylor Court remanded the case so that this determination could be made with respect to Taylor's prior convictions.
 
 
 9
 After Taylor, our analysis of predicate offenses has followed this categorical approach. See United States v. Damon, 127 F.3d 139, 141-46 (1st Cir.1997); Meader, 118 F.3d at 881-83 ("[T]he standard approach for determining whether a particular crime fits within the 'crime of violence' rubric is a generic one, in which inquiry is restricted to the statutory definitions of prior offenses, without regard to the particular facts underlying them.") (citations omitted); United States v. Winter, 22 F.3d 15, 18 (1st Cir.1994); United States v. De Jesus, 984 F.2d 21, 23 (1st Cir.1993) ("[R]ather than examining the actual circumstances underlying the earlier conviction, we examine only the statutory formulation of the crime charged ... to see if that crime is a crime of violence....").
 
 
 10
 The Rhode Island statute, defining third degree sexual assault as it applied in 1989 at the time of Sacko's conviction, is as follows:
 
 
 11
 A "person" is guilty of third degree sexual assault if he or she is over the age of eighteen (18) years and engaged in sexual penetration with another person over the age of fourteen (14) years and under the age of consent, sixteen (16) years of age.
 
 
 12
 Because the Rhode Island statute does not include as an element the use or threat of physical force, it is undisputed that in order to qualify as a "violent felony," it must fall under the "otherwise" clause of § 924(e)(2)(B), and therefore be an offense that presents "a serious potential risk of physical injury." The district court, in determining the potential risk of physical injury posed by statutory rape, made the following observations:
 
 
 13
 So what the Court has to determine here is whether statutory rape presents a serious risk, serious potential risk of physical injury to another, and whether that risk is inherent in the usual type of conduct that constitutes the offense....
 
 
 14
 What the Court has to look at here is what's the typical, usual type of conduct that makes up the offense of statutory rape. And it seems to me, there were two paradigms here. One category of usual conduct in statutory rape would be where the young woman or female consents in every sense of the word except the legal sense, since the law does not recognize the ability of a minor to consent to such activity. But, but for that, it would be considered a consensual, mutually-consensual act on the part of the two participants, where the only reason that an offense is committed is the age of the woman, of the female.
 
 
 15
 The other model for statutory rape is one that is very similar to any other kind of rape, except that there has been no actual force used or threatened, but the activity cannot be characterized as consensual on the part of the victim and, therefore, because it is not consensual, it clearly presents a serious potential risk of physical injury because of the likelihood that if the victim resists, that force will be used and serious harm will result.
 
 
 16
 As best I can make out from the pre-sentence report here, the pre-sentence report indicates that the Defendant--the Defendant met the victim on the street, somehow induced her to go back to his apartment or his mother's house, I guess it was, and directed her to take off her clothes and then had sexual intercourse with her. Shortly thereafter, three males--three other males entered the room, the victim ran away and, obviously, reported the incident to the police.
 
 
 17
 So it seems clear that what happened in this case falls into the second category of offenses, and not the first. And, therefore, I find that this is a violent felony within the meaning of the statute.
 
 
 18
 Tr. 11/14/97 at 27-29.
 
 
 19
 Sacko argues:(1) that the district court's approach was a violation of the "categorical" approach, and (2) that the determination that Sacko's conviction was for a "violent felony" was in error.
 
 
 20
 While the categorical approach frames our inquiry, as with most any rule, there is an exception. A basis for expanding the inquiry beyond the cold words of the statute is found in Taylor, where the Supreme Court carved out a narrow exception to the categorical approach for cases in which the statute of conviction covers conduct both inside and outside the "violent felony" sphere. In such instances, the sentencing court may look to the information or indictment and jury instructions to ascertain whether the conduct that was the basis for the conviction constituted a violent felony. See Meader, 118 F.3d at 882 n. 9.
 
 
 21
 Because statutory rape can encompass both violent and non-violent conduct, it was permissible for the district court to examine the indictment to learn that "George Sacko [age 21] ... did engage in sexual penetration, vaginal intercourse, with [Jane Doe], age 14...."[2] The district court's investigation of the circumstances of the crime should have ended there.[3] It was error for the district court to delve into the facts of Sacko's crime in order to determine whether his conviction was for a violent or a non-violent crime. See Taylor, 495 U.S. at 600, 110 S.Ct. 2143 (stating that "the language of § 924(e) generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions").
 
 
 22
 In deciding whether Sacko's conviction constitutes a "violent felony," we look to Meader, United States v. Shannon, 110 F.3d 382 (7th Cir.1997) (en banc), and United States v. Thomas, 159 F.3d 296 (7th Cir.1998).
 
 
 23
 In Meader, we held that the conviction of a 39 year old man under a Maine statute for statutory rape with a girl under the age of fourteen was a "crime of violence." See Meader, 118 F.3d at 884-85. Two crucial factors supporting our conclusion were: (1) the age of the girl; (2) the large chronological gap between the victim and the defendant; and (3) the medical literature regarding the possible physical injuries to the girl as a result of sexual intercourse with the defendant. See id. at 884.
 
 
 24
 In Shannon, the Seventh Circuit, sitting en banc, decided an issue remarkably similar to the one at hand: whether sexual intercourse between a 17 year old boy and a 13 year old girl is a crime of violence. See Shannon, 110 F.3d at 385. Writing for the Court, Chief Judge Posner discussed the issue of whether any felonious act with a minor creates a serious potential risk of physical injury. See id. at 386. Citing the wide variation in age above which sex with a minor is not regarded as felonious in the absence of any aggravating factors, he concluded that "a serious risk of physical injury cannot be automatically inferred from the existence of a statutory-rape law." Id. (noting, for example, that in Iowa, "the minor need only have reached the age of 14, and in Pennsylvania, she need only have turned 13").
 
 
 25
 His conclusion that sexual intercourse between a 17 year old boy and a 13 year old girl involved conduct that presents a serious potential risk of physical injury to another was based on "medical literature which indicated that a 13 year old is unlikely to appreciate fully or be able to cope effectively with the disease risks and fertility risks of intercourse and that if she does become pregnant it is likely to be a high risk pregnancy both for her and the fetus." Id. at 387-88.
 
 
 26
 In Thomas, Chief Judge Posner, writing for the panel, stated that "it is difficult to maintain on a priori grounds that sex is physically dangerous to 16 year old girls," Thomas, 159 F.3d at 299, because "[m]ore than 40 percent of the 16 year old girls in our society have had sexual intercourse ... and 45 of the 50 states permit marriage at 16." Id. Relying on these facts and the government's failure to cite any secondary literature delineating the potential risk of injury posed by a 16 year old girl engaging in sexual intercourse, the Court vacated Thomas's sentence as an armed career criminal.
 
 
 27
 This Court stands in the midst of an issue fraught with peril. As we stated in Meader, this is an issue that "appeals courts, have neither the expertise nor the authority to resolve in the first instance," 118 F.3d at 885, and which should be resolved by the Sentencing Commission and Congress. In Meader, it was "commonsensical" that there was a serious potential risk of injury because of the large age difference between the defendant and the victim. In Shannon, the Seventh Circuit relied on copious medical evidence discussing the potential risks that result from a 13 year old girl engaging in sexual intercourse. Here, we are unprepared to say a priori that sex is not physically dangerous for a 14 year old girl. However, we have no legal basis for the opposite conclusion, no studies or medical journals to ground such a holding.
 
 
 28
 As a result, we remand this case to the district court to take evidence on the issue whether the crime of sexual penetration of a fourteen year-old by someone over the age of eighteen involves conduct presenting a serious potential risk of physical injury to the former. As a circuit, we have not yet needed to address the issue with these age characteristics. Our opinion in Meader involved a thirteen year-old and relied on physical injuries "includ[ing] abrasions, hymenal transections, first-degree vaginal tears, and perianal tears." Meader, 118 F.3d at 882 n. 7 (quoting State v. Rundlett, 391 A.2d 815, 819 (Me.1978)). For the purposes of Meader, we found these injuries sufficient to find that the defendant's conduct "involve[d] conduct that present[ed] a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2.
 
 
 29
 In so doing, we explicitly recognized the fact that we "bypassed a number of troubling and complex issues" including "what is meant by 'physical injury'[.]" Meader, 118 F.3d at 884. We then highlighted the disagreement on this particular point among the judges of the Seventh Circuit. See Meader, 118 F.3d at 884-85. We have already outlined the more expansive views of the majority. See supra at 229. However, a concurrence suggested that "the risk of physical injury referred to in the Guideline must be confined to the act of intercourse, not the possible consequences that could develop, such as pregnancy or disease." Shannon, 110 F.3d at 390 (Manion, J., concurring).
 
 
 30
 The district court may find the risks of physical injury during penetration to be sufficient to meet the requisite "serious potential risk of physical injury." If not, it will have to address the alternative noted above. In the continuing absence of guidance from Congress and the Sentencing Commission, additional briefing by the parties, and an initial determination by the district court, we deem it inappropriate to proceed.
 
 CONCLUSION
 
 31
 For the reasons stated in this opinion, we REMAND this case to the district court for further proceedings consistent with this opinion.
 
 
 32
 Before: TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, SELYA, BOUDIN, STAHL, LYNCH, LIPEZ, Circuit Judges.
 
 ORDER
 June 16, 1999
 
 33
 By petition for rehearing or rehearing en banc, Fed.R.App.P. 35(b), the government asks that the panel decision be withdrawn and that the district court's sentencing determination be affirmed because "[i]n the limited circumstances presented in this case, it is appropriate for the district court to examine the PSR in making its violent felony determination." Petition at 13. The petition argues that the panel acted inconsistently with a First Circuit decision released three days later, in United States v. Dueno, 171 F.3d 3 (1st Cir.1999), by concluding that "[i]t was error for the district court to delve into the facts of Sacko's crime as described in the pre-sentence report in order to determine whether his conviction was for a violent or non-violent crime." Sacko, slip op. at ----.
 
 
 34
 Although there is an arguable conflict between the language of the original Sacko decision and language in Dueno, the Sacko panel has altered the original opinion by an erratum released simultaneously with this order, thereby resolving the conflict. Contrary to the government's assumption, the alteration does not affect the result of the appeal; the erratum merely clarifies the reason why the only facts pertinent to the categorical determination are already established without reference to the pre-sentence report. The remand in Sacko was required because this court was unable to determine whether the statutory rape offense involving participants of the ages indicated involved a sufficient risk of harm to classify it as a crime of violence, and eliminating any reference to the pre-sentence report does not ameliorate this uncertainty. Consequently, no reason exists for the en banc court to intervene.
 
 
 35
 Despite the erratum, however, the en banc court believes that this order on reconsideration is appropriated to make clear the en banc court's view as to what is now settled law in this circuit and what is left open for future resolution. The context is a set of vexing issues concerning the enhancement provision contained in 18 U.S.C. § 924(e), as construed by the Supreme Court in Taylor v. United States, 495 U.S. 575, 578-99 (1990). Particular difficulties have attended the application of the statute to cases that require judges to determine--under section 924(e)'s "otherwise" clause--whether the crime of statutory rape as defined by state law constitutes a crime of violence within the meaning of section 924(e).
 
 
 36
 Two related but different questions have become entangled in this inquiry: one is the substantive question how Taylor's categorical approach (as opposed to an approach focusing on defendant's conduct) should be applied in deciding whether statutory rape is a crime of violence; and the other question, more procedural in character, is how far materials other than the indictment and jury instructions (specifically mentioned in Taylor, 495 U.S. at 602) may be consulted in resolving the substantive question--resort to the pre-sentence report being a particular subject of controversy.
 
 
 37
 On the substantive issue, we and other circuits have regarded Taylor's categorical approach, applied in Taylor to the "burglary" clause of section 924(c), as also applying to determinations made under the "otherwise" clause. However, this court has been willing on the authority of certain language in Taylor to consider statutory rape statutes as if they encompassed different subordinate offenses depending on the ages of the participants, at least where the specific ages could be ascertained by resort to permissible sources. See United States v. Meader, 118 F.3d 876, 882-84 (1st Cir.1997). Nothing in our decisions otherwise warrants consideration of the circumstances of the particular crime.
 
 
 38
 The procedural question whether pre-sentence reports may be consulted in making the crime of violence determination involves a different set of considerations. As already noted, under Taylor's categorical approach, facts about the predicate crime are pertinent only to identify the statutory or common law offense of which the defendant was convicted in the prior case; and collateral facts as to the defendant's conduct on the earlier occasion are not relevant for any other purpose. Under Taylor, burglary is a crime of violence even if no violence was used in the particular case; and, conversely, being a felon in possession is not a crime of violence even if the felon happened to shoot someone but was convicted only under if the felon-in-possession statutue. Cf. United States v. Doe, 960 F.2d 221, 224 (1st Cir.1992).
 
 
 39
 Our cases have approved resort to pre-sentence reports but only to determine the character of the criminal offense for which the defendant was convicted (not whether violence was or was not used on the particular occasion), see U.S. v. Harris, 964 F.2d 1234, 1236 (1st Cir.1992), where that determination cannot be made from the statutory language itself or from the charging documents, and only where the report was sufficiently reliable on this issue, see Dueno, 171 F.3d at 7. Further, the court has approved use of the pre-sentence report only when the issue is not settled by the indictment and the conviction was by plea of guilty so no jury instructions are available; whether resort is proper where the predicate offense was tried has not been decided and remains open for future resolution. See United States v. Winter, 22 F.3d 15, 20 n.8 (1st Cir.1994).
 
 
 40
 The petition for rehearing en banc is denied, This order nonetheless is to be published as the order of the en banc court.
 
 
 
 [1]
 We have repeatedly held that there are no material differences between definitions of a "violent felony" under the ACCA, and a "crime of violence" under the Sentencing Guidelines. See United States v. Meader, 118 F.3d 876, 882 n. 8 (1st Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 729, 139 L.Ed.2d 667 (1998)
 
 
 [2]
 First, while Sacko's age is not enumerated on the indictment per se, his date of birth and the date of the offense are. Common sense and simple mathematics provides the reader with his age. Second, Jane Doe is a pseudonym for the victim
 
 
 [3]
 Because Sacko pled nolo contendre (no contest) to the charge, there are no jury instructions to examine