*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0255p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

　　*v.*

TYRICE L. SAWYERS,

　　　　　　*Defendant-Appellant.*

No. 02-5835

>

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 99-00193—Thomas A. Higgins, District Judge.

Argued: November 3, 2004

Decided and Filed: June 13, 2005

Before: MOORE and GIBBONS, Circuit Judges; EDMUNDS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Robert D. Little, LAW OFFICE OF ROBERT LITTLE, Maplewood, New Jersey, for Appellant. Paul M. O'Brien, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Robert D. Little, LAW OFFICE OF ROBERT LITTLE, Maplewood, New Jersey, for Appellant. J. Gabriel Banks, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. Tyrice L. Sawyers, Atlanta, Georgia, pro se.

---

## OPINION

---

　　EDMUNDS, District Judge. Defendant-Appellant Tyrice Sawyers appeals his conviction, pursuant to 18 U.S.C. §§ 922(g) and 924(a), for possession of a firearm by a convicted felon and his sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and the sentencing guidelines. For the reasons that follow, the conviction is **AFFIRMED**. The district court erred, however, by employing the categorical approach when determining whether statutory rape constitutes a predicate "violent felony" under the ACCA. Therefore, the sentence is **VACATED** and the case is **REMANDED** for further findings consistent with this opinion.

---

[*]The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.     Background

The underlying facts in this case are not in dispute.  On November 10, 1999, Tyrice Sawyers ("Sawyers") was indicted for violating 18 U.S.C. §§ 922(g) and 924(a)–i.e., unlawfully possessing a firearm as a previously convicted felon.  During trial, the government presented testimony of three police officers who recovered a gun they witnessed Sawyers discard over a fence.  Prior to jury deliberations, Sawyers stipulated that (1) he had previously been convicted of a felony punishable by more than one year in prison and (2) the firearm recovered had moved in interstate commerce because it was not manufactured in Tennessee.  On February 20, 2000, the jury returned a guilty verdict.

On June 6, 2002, the district court, following the ACCA, sentenced Sawyers to 300 months in prison.  The ACCA was applied because the court found that three of Sawyers's previous convictions–facilitation of aggravated burglary, statutory rape, and retaliation for past action–were "violent felonies" as described under the Act.  In reaching this conclusion, the district court followed the strict categorical approach set out in *Taylor v. United States*, 495 U.S. 575 (1990).

Sawyers filed a timely appeal arguing that his conviction was not supported by sufficient evidence, that § 922(g)(1) is unconstitutional as applied to him, that he should not have been sentenced under the ACCA, and that, pursuant to *Blakely v. Washington*, 124 S.Ct. 2531 (2004), the sentence violated his constitutional rights.  Each argument is addressed in turn.

## II.     The Conviction

### A.     Sufficiency

A conviction is supported by sufficient evidence if, viewing the evidence in a light most favorable to the prosecution and giving the government the benefit of all inferences reasonably drawn from the testimony, a rational jury could find the elements of a crime beyond a reasonable doubt.  *United States v. M/G Transport Services, Inc.,* 173 F.3d 584, 589 (6th Cir. 1999)(citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  For Sawyers's conviction, the government was required to prove three elements: (1) he was convicted of a crime punishable by imprisonment for a term exceeding one year; (2) he knowingly possessed a firearm or ammunition; and (3) such possession was in or affecting interstate or foreign commerce.  *United States v. Moreno*, 933 F.2d 362, 372 n.1 (6th Cir. 1991).

Here, Sawyers argues that the government did not prove the third element beyond a reasonable doubt.  In *United States v. Chesney*, 86 F.3d 564, 572 (6th Cir. 1996), however, this Court held that "[the defendant's] stipulation that the gun had been transported in interstate commerce was sufficient to meet § 922(g)(1)'s 'in or affecting commerce' requirement."  Therefore, because Sawyers similarly stipulated that the firearm moved in interstate commerce, the third element was proven and Sawyers's conviction was supported by sufficient evidence.

### B.     Constitutionality

Sawyers's second argument is a reformulated version of his first.  Specifically, he contends that § 922(g) is unconstitutional as applied to him because the Government failed to prove any substantial connection to interstate commerce.  Questions concerning the constitutionality of a statute are reviewed *de novo*.  *United States v. Napier*, 233 F.3d 394, 397 (6th Cir. 2000)(citations omitted).

As noted, the court in *Chesney* held that the interstate commerce requirement was satisfied when a defendant stipulates that the gun was transported into that state.  *Chesney*, 86 F.3d at 570-72.

Sawyers argues, however, that the reasoning and standard set forth in *Chesney* has been implicitly overruled by the Supreme Court.

Sawyers relies on *Lopez v. United States*, 514 U.S. 549 (1995), *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000). Faced with the same argument, however, the *Chesney* court held that § 922(g) survives constitutional scrutiny under *Lopez* because, unlike the statute examined there, § 922(g) contains a jurisdictional element. *Chesney*, 86 F.3d at 569-70. Moreover, as noted in *Chesney*, the Supreme Court expressed approval of 18 U.S.C. § 1202(a),[1] the predecessor statute to § 922(g)(1), because it explicitly barred only those activities that were "in commerce or affecting commerce." *Id.*

The decision in *Chesney* preceded *Morrison* and *Jones*. In *United States v. Napier*, however, this Court found that the reasoning of *Chesney* has not been overruled. *Napier*, 233 F.3d at 400-01. Faced with a challenge to § 922(g)(8), a statute that shares § 922(g)(1)'s jurisdictional provision, this Court held that

> *Jones* does not invalidate the *Chesney* analysis. In contrast to [the statute in *Jones*], § 922(g) does not contain the "use" requirement that was at the heart of the *Jones* opinion. Nothing in *Jones* suggests that the Supreme Court is backing off of its opinion that § 1202(a) . . . required only "the minimal nexus that the firearm have been, at some time, in interstate commerce." *Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977).
>
> We accordingly reject [the defendant's] contention that he could not be convicted under § 922(g)(8) unless the government could show that his continued possession of the gun had a substantial connection to interstate commerce. There is no question that the firearm and ammunition possessed by [the defendant] had previously traveled in interstate commerce. That is sufficient to establish the interstate commerce connection.

*Id.* at 401. In addition, the *Napier* court rejected the claim that *Morrison* nullified the *Chesney* ruling because § 922(g), unlike the statute in *Morrison*, does contain a jurisdictional element. *Id.* at 402. Therefore, this Court rejects Sawyers's argument that § 922(g)(1) is not constitutional as applied to him.

## III.    The Armed Career Criminal Act

This Court renders *de novo* review of a district court's determination that a defendant should be sentenced as an armed career criminal. *United States v. Maness*, 23 F.3d 1006, 1008 (6th Cir. 1994).

The ACCA provides that

a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on

---

[1] Section 1202(a) read:

Any person who . . . has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses, or transports in commerce or affecting commerce, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

18 U.S.C. § 1202(a) (1977).

occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1). The statute goes on to define "violent felony" as

any crime punishable by imprisonment for a term exceeding one year . . . that – (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(1)(B). In other words, to constitute a "violent felony," it must be shown that the crime is punishable by imprisonment for more than one year; in addition, it must either (a) be specifically enumerated–i.e., burglary, arson, or extortion, (b) involve the use of explosives, (c) contain an element that involves physical force or (d) present a "serious potential risk of physical injury." Crimes in this last category are often said to fall within the "otherwise clause."

In this analysis, courts must generally follow "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor*, 495 U.S. at 600 (citations omitted); *see also United States v. Kaplansky*, 42 F.3d 320, 322 (6th Cir. 1994)(en banc). A narrow exception exists for "cases where a jury . . . was actually required to find all the elements of the generic offense." *Shepard v. United States*, 125 S.Ct. 1254, 1258 (2005)(quoting *Taylor*, 495 U.S. at 602). In this circuit, the exception has been held to apply "where a statute broadly defines a felony." *United States v. Seaton*, 45 F.3d 108, 111 (6th Cir. 1995)(citing *Taylor*, 495 U.S. at 602); *see also United States v. Sacko*, 247 F.3d 21, 23 (1st Cir. 2001)(holding that "when the relevant criminal statute encompasses both violent and non-violent felonies, a sentencing court may go beyond the statutory language").

## A.       Facilitation of Aggravated Burglary

In 1992, in a Tennessee state court, Sawyers pled guilty to facilitation of a felony or, more specifically, facilitation of aggravated burglary. He argues that the district court erred in classifying this as a "violent felony" under the ACCA. We find, however, that the district court was correct and affirm its holding.

A person is a party to a crime in Tennessee "if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." TENN. CODE ANN. § 39-11-401(a). The comments to this section make clear that Tennessee law provides "equal liability for principals, accessories before the fact, and aiders and abettors." *Id.* § 39-11-401(a) cmt. More specifically, a person is criminally responsible for an offense committed by another so long as he has the appropriate mental state–i.e., an "intent to promote or assist the commission of the offense, or to benefit in the proceeds"–and solicits, directs, aids, or attempts to aid the person who commits the crime. *Id.* § 39-11-402(2).

"[F]acilitation of a felony is a lesser-included offense when a defendant is charged with criminal responsibility for the conduct of another." *State v. Fowler*, 23 S.W.3d 285, 288 (Tenn. 2000). "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility [for the offense,] . . . the person knowingly furnishes substantial assistance in the commission of the felony." TENN. CODE ANN. § 39-11-403(a).

Here, Sawyers pled guilty to facilitation of aggravated burglary. "Aggravated burglary occurs when an individual enters a habitation 'without the effective consent of the property owner'

and, . . . intends to commit a felony . . . ."  *State v. Langford*, 994 S.W.2d 126, 127 (Tenn. 1999)(citing TENN. CODE ANN. §§ 39-14-402 and 39-14-403).

Facilitation of aggravated burglary satisfies the "felony" requirement because it is punishable by more than one year.  Specifically, as a class D felony, the crime carries a minimum two year sentence.  TENN. CODE ANN. § 40-35-111(b)(4).[2]  It is therefore necessary to determine if the crime meets the second requirement under the ACCA.  Facilitation of aggravated burglary clearly does not involve the use of explosives or contain an element of force.  Thus, it is a "violent felony" only if it is specifically enumerated or falls within the otherwise clause.

Burglary is a listed in the ACCA as a "violent felony."  In *Taylor*, the Supreme Court held that a crime is a burglary for purposes of the ACCA if there was "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."  *Taylor*, 495 U.S. at 598 (citations omitted).  While aggravated burglary in Tennessee meets this standard, its facilitation does not.  A person responsible for facilitation need not possess the mental state to commit the underlying crime; instead, he must only be aware that another person intends to commit it and knowingly furnish substantial assistance.  *See* TENN. CODE ANN. § 39-11-403(a).[3]  Thus, it is not a "burglary" under the statute.  It does, however, fall within the otherwise clause.

In *United States v. Bureau*, 52 F.3d 584 (6th Cir. 1995), this Court concluded that attempted burglary in Tennessee is a "violent felony" because "the propensity for a violent confrontation and the serious potential risk of injury inherent in burglary is not diminished where the burglar is not successful in completing the crime."  *Id.* at 593.  In contrast, facilitation requires that the burglary actually occur.  *State v. Parker*, 932 S.W.2d 945, 951 (Tenn. Crim. App. 1996).  It is obvious that more opportunities exist for a third-party to be physically injured over the course of a completed crime than when that crime is merely attempted (i.e., abandoned sometime before completion).  Thus, facilitation of aggravated burglary presents a risk of physical injury sufficient to be classified as a "violent felony."

Sawyers, relying on *United States v. Pazzanese*, 982 F.2d 251 (8th Cir. 1992), argues that criminal facilitation is never a "violent felony" under the ACCA.  Although Sawyers commingles the arguments, there are essentially two components to this claim: first, because of the categorical approach, facilitation crimes cannot be classified as a "violent felony" based on the underlying crime; and second, facilitation does not meet the inherent mens rea requirement in the ACCA.

The first argument is quickly disposed of.  First, criminal facilitation in Tennessee requires the government to show that the underlying crime actually occurred.  *See Parker*, 932 S.W.2d at 951 (holding that, for facilitation of a felony, "the state must prove the commission of a specified felony and the assistance the accused gave to the person committing the specified felony")(footnote omitted); *see also State v. Virges*, No. 02C01-9206-CR-00124, 1994 WL 51420, at *2 (Tenn. Cr. App. 1994)(holding that "there is no offense of facilitation apart from the specific felony committed

---

[2]This classification exists because, in Tennessee, facilitation is an offense one class below the underlying felony and aggravated burglary is a class C felony.  TENN. CODE ANN. § 39-11-403(b).

[3]Some courts have found that "one who aids and abets the commission of a generic burglary by serving as a lookout" may, nonetheless, meet the requirements set forth in *Taylor* even though that person did not enter into the building.  *See*, *e.g.*, *United States v. Gentry*, 782 F.Supp. 1276, 1279 (N.D.Ill. 1992) *aff'd* 978 F.2d 1262 (7th Cir. 1992).  Tennessee law holds a person criminally responsible for situations where that person, although not present, is deemed a party through aiding and abetting.  *See* TENN. CODE ANN. § 39-11-402.  However, Sawyers was convicted of facilitation, not aiding and abetting–i.e., it was not proven that he had sufficient culpability to be considered a party.  Thus, this Court need not decide whether a person who was not present during the commission of the crime can, nonetheless, commit a "burglary" under the ACCA.

by the acts of facilitation"). The specific felony therefore constitutes "an element" that can be examined by the court.

This holding does not, as Sawyers contends, contradict the reasoning behind the categorical approach. In *Taylor*, the Supreme Court held that, unless an exception applies, courts cannot look to "the particular facts underlying th[e] convictions" in part because "the practical difficulties and potential unfairness of a factual approach are daunting." *Taylor*, 495 U.S. 600-01. This type of examination is not being sanctioned here. Rather, a court is only permitted to examine the type of felony that was facilitated. In a like manner, for an attempt, a court must look at what type of crime was attempted to see whether it is a "violent felony." *See*, *e.g.*, *Bureau*, 52 F.3d at 589-90. Thus, considering the crime *facilitation of aggravated burglary* and not simply *facilitation of a felony* is permissible.

The second argument is more difficult, especially in light of the Supreme Court's recent decision in *Leocal v. Ashcroft*, 125 S.Ct. 377 (2004). As *Leocal* succeeded the arguments in this case, Sawyers relied primarily on *Pazzanese*, an Eighth Circuit case which held that criminal facilitation in New York was not a "felony drug offense." *Pazzanese*, 982 F.2d at 254.[4] The court found that the facilitation offense "involve[d] no mental culpability with respect to a substantive narcotics offense . . . ." *Id.* at 254.[5] Because the court determined that it was "unclear" whether Congress incorporated a mens rea requirement into a "felony drug offense," it applied the rule of lenity and held that facilitation did not fall within this category. *Id.*

Our inquiry begins, as it must, by examining the plain language of the ACCA. *See*, *e.g.*, *Bd. of Educ. of Westside Cmty. Schools v. Mergens*, 496 U.S. 226, 237 (1990). The definition of "felony drug offense" does not contain any relevant similarities to the ACCA and, thus, the reasoning in *Pazzanese* is not persuasive. On the other hand, in *Leocal*, the Supreme Court determined that a "crime of violence," a similar term with a slightly different definition,[6] must involve "active employment;" it does not, in other words, "encompass all negligent misconduct." 125 S.Ct at 382-83.

The definitions of "violent felony" and "crime of violence" both include two subsections. The first subsections are almost identical and, importantly, contain the word "use." *See* 18 U.S.C. § 16(a)("an offense that has as an element the use . . . of physical force"); *id.*

---

[4] A "felony drug offense" was defined in the statute at issue as "a felony under any law of a state or foreign country that prohibits or restricts conduct relating to narcotic drugs, marijuana, or depressant or stimulant substances." *Pazzanese*, 982 F.2d at 253 (citing 21 U.S.C. § 841(b)(1)(A) (repealed 1994)).

[5] Instead, the mens rea element for the criminal facilitation statute in *Pazzanese* required a guilty party to "believ[e] it probable that he is rendering aid to a person who intends to commit [a felony.]" *Pazzanese*, 982 F.2d at 254 (citing N.Y. PENAL LAW § 115.05).

[6] Specifically, a "crime of violence" is defined by 18 U.S.C. § 16 as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The term "crime of violence"" is used in numerous sections of the United States Code and the Sentencing Guidelines. In some places, the definition from § 16 is used. *See*, *e.g.*, 18 U.S.C. § 924(c)(3). In others, the language is almost identical to the definition of "violent felony" from the ACCA. *See*, *e.g.*, SENTENCING GUIDELINES MANUAL § 4B1.2(a) (2004). Other sections have yet another definition. *See*, *e.g.*, SENTENCING GUIDELINES MANUAL § 2L1.2 cmt., Application Note 1(B)(iii) (2004).

§ 924(e)(1)(B)(i)(same).[7]  The Court in *Leocal*, relying on the common meaning of the verb, found that "'use' requires active employment."  125 S.Ct. at 382 (citation omitted).  Pursuant to this reasoning, a crime within the first subsection of the ACCA must contain "a higher degree of intent than negligent or merely accidental conduct."  *Id.* (citations omitted).  As noted above, however, Sawyers's conviction for facilitation of aggravated burglary does not contain an element of force.

In the second subsections, the definitions of "crime of violence" and "violent felony" diverge.  For a "crime of violence," this subsection, building on the first, encompasses all crimes where there is a substantial risk that physical force will be used.  18 U.S.C. § 16(b).  The second subsection of "violent felony" does not employ the "use of force" terminology, but does include situations involving a risk–specifically, crimes that "otherwise involve conduct that presents a serious potential risk of physical injury to another."  *Id.* § 924(e)(1)(B)(ii).  The difference between the risks involved in each definition is significant: the risk that force will be used requires an examination of the defendant's actions; in contrast, the risk that injury will result focuses on the effect. *Cf. Leocal*, 125 S.Ct. at 383 n.7.  While a defendant cannot generally perform actions without some awareness of what he is doing, he can always act disregarding the effect.  Therefore, based on the plain language of the statute, the second subsection of "violent felony" does not require a minimum mental culpability requirement; this standard is left to the legislatures that criminalize the offense.[8]  Sawyers's argument must therefore be rejected.  Because the district court properly concluded that facilitation of aggravated burglary was, categorically, a violent felony under the ACCA, its holding on this issue is affirmed.

## B.     Statutory Rape

Two years later, Sawyers pled guilty to statutory rape.  He argues that, contrary to the district court's finding, this crime is not a "violent felony."  Because the district court improperly used the categorical approach, we vacate the holding on this issue and remand for further consideration.

In Tennessee, "[s]tatutory rape is sexual penetration of a victim by the defendant . . . when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least four (4) years older than the victim."  TENN. CODE ANN. § 39-13-506(a).  Statutory rape is a Class E felony which carries a punishment of no less than one year in prison.  *Id.* §§ 39-13-506(c) and 40-35-111(b)(5).  The government contends that this crime satisfies the second requirement under the ACCA because it presents a serious risk of physical injury.  Although this court has not yet determined when or if statutory rape constitutes a "violent felony," other sex crimes have been found to be "crimes of violence" under § 4B1.2(a) of the United States Sentencing Guidelines.[9]

---

[7]The difference is that, in the definition of "crime of violence," the use of force can be against another's property; on the other hand, in the ACCA, property is not mentioned.  *Compare* 18 U.S.C. § 16(a) *with id.* § 924(e)(1)(B)(i).

[8]In *United States v. Rutherford*, 54 F.3d 370 (7th Cir. 1995), the Seventh Circuit provided an additional reason for this conclusion.  Examining the term "crime of violence" in § 4B1.2 of the United States Sentencing Guidelines (which is almost identical to the ACCA), the court found that the first prong requires a specific intent.  *Id.* at 372-374.  It further reasoned that "includ[ing] the reckless or negligent exertion of force [in this prong would make] the 'otherwise' clause . . . redundant."  *Id.* at 373-374 (footnote omitted).  In other words, according to the court, the structure of the statute supports the conclusion: "The first prong discusses intentional acts, while the second prong discusses acts with a mental state of less than intent." *Id.* at 373.

[9]As noted above, the phrase "crime of violence" is used frequently with varying definitions.  *See* note 6 *supra*.  The § 4B1.2(a) definition is, however, worded the same as the ACCA definition of "violent felony" and therefore provides a useful comparison.  *Compare* 18 U.S.C. § 924(e)(1)(B) *with* SENTENCING GUIDELINES MANUAL § 4B1.2(a)(2002); *see also United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995)(holding that "[t]he definition of a violent felony . . . is nearly identical to the definitions of a crime of violence used in the Guidelines"); *United States*

The court in *United States v. Champion*, 248 F.3d 502, 506 (6th Cir. 2001), found that defendant's violation of 18 U.S.C. § 2251(a) constituted a "crime of violence." Section 2251(a) punishes "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct. . . ." 18 U.S.C. § 2251(a). The defendant was convicted after transporting a 13 year old girl into the state and taking photographs of her engaging in sexual intercourse. *Champion*, 248 F.3d at 503. The court, looking at the legislative history, concluded that Congress "itself has undertaken the factfinding necessary to conclude that a violation of § 2251(a), by its very nature, presents a serious potential risk of physical injury" and is therefore a "crime of violence." *Id.* at 506.[10]

The government asks this Court to read *Champion* as holding that every crime involving sexual intercourse with a minor is a per se "violent felony" under the ACCA. This reading casts a broader net than the court fashioned. The holding in *Champion* was based on Congressional findings that "*the use of children in the production of sexually explicit materials . . . can result in physical or psychological harm . . . .*" *Champion*, 248 F.3d at 506 (citing Pub.L. 104-208, Div. A, Title I, § 101(a))(emphasis added). Statutory rape–that, in Tennessee, can involve consensual sex between a 17 year old and a 21 year old–is not equivalent to exploitation in sexually explicit materials. Moreover, the court relied on a Congressional determination which is not present here.[11]

This court has also found that Michigan's "second-degree criminal sexual conduct [crime] involving 'sexual contact' with a person, age 13 to 16, of the same blood affinity presents a 'serious potential risk of physical injury to another.'" *United States v. Campbell*, 256 F.3d 381, 396 (6th Cir. 2001)(citing SENTENCING GUIDELINES MANUAL § 4B1.2(a)). While this holding does offer some support for the government's position, the statute is distinguishable from Tennessee's statute considered here. There, the victim can be two years younger and the perpetrator must be a family member. *See id.* (holding that "there is a real possibility that physical force may be used in making sexual contact when the victim is a minor between 13 and 16 and within the structures of familiarity and proximity bred by kinship").

In *United States v. Thomas*, 159 F.3d 296, 298-300 (7th Cir. 1998), the Seventh Circuit examined whether Illinois's statutory rape law was a "violent felony" under the ACCA. The case provides a useful comparison because the statute did not contain the aggravating factors in *Champion* and *Cambell*–i.e., exploitation in explicit materials or a familial connection–and set the age of victims (under 17 years old) closer to the statute examined here (under 18 years old). *Id.* at 298 (citing 720 ILL. COMP. STAT. 5/12-16(d)). Looking only at the information in the charging

---

*v. Johnson*, 246 F.3d 330, 334 n.5 (4th Cir. 2001)(holding that "our reasoning regarding the meaning of 'violent felony' is relevant to determining the meaning of 'crime of violence'" because the definitions are almost identical). *But see* SENTENCING GUIDELINES MANUAL § 4B1.4 cmt., Application Note (1) (2002)(stating that the term "violent felony" in the ACCA is "not identical" to the definition of "crime of violence" as used in § 4B1.1).

[10] The government also relies on *United States v. Perez-Velasquez*, 67 Fed.Appx. 890, (6th Cir. 2003), to support its position. In that case, however, the "crime of violence" definition at issue was substantially different from the standard for "violent felony" under the ACCA. *Compare* SENTENCING GUIDELINES MANUAL § 2L1.2 cmt., Application Note (1)(B)(ii) (2001) *with* 18 U.S.C. § 924(e)(1)(B). Thus, the analysis from *Perez-Velasquez* is not helpful to the determination here.

[11] The *Champion* court did note "that even without the consideration of Congress' findings, a violation of § 2251(a) would cross the threshold for serious potential risk of physical injury." *Champion*, 248 F.3d at 506. It is not clear, though, that the court was considering every possible victim. The court had stated that it could "take into account conduct expressly charged in [the] indictment" and that the crime occurred when the defendant took pictures of the *13 year old* victim engaging in various acts of sexual intercourse. *Id.* at 503, 505-06 (citations omitted). However, there was no mention of the statutory definition of minor found in 18 U.S.C. § 2256(1). It is therefore unclear whether the court was referring to § 2251(a) violations with 13 year old victims or any minor under the statute. Because we do not think the court went as far as the government urges, we decline to adopt this expansive interpretation of *Champion*.

document (which, in that case, did not contain the age of the victim), the court found it "difficult to maintain on a priori grounds that sex is physically dangerous" to every potential victim under the statute. *Id.* at 299.[12]

The First Circuit examined a similar statute–punishing a person over the age of 18 who engages in sexual intercourse with a person between 14 and 16–in *United States v. Sacko*, 178 F.3d 1 (1st Cir. 1999). The court determined that statutory rape crimes fall within the exception to the categorical approach because they "cover[ ] conduct both inside and outside the 'violent felony' sphere." *Id.* at 4-5. We agree with the First and the Seventh Circuits that statutory rape statutes that include more mature victims and do not contain aggravating factors are not subject to the strict categorcial approach articulated in *Taylor. See Seaton*, 45 F.3d at 111 (holding that if a crime is broadly defined, the court can look beyond the elements of the crime). Thus, this case should be remanded for the district court to consider, along with the statutory definition, the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 125 S.Ct. at 1257.

### C.      Retaliation for Past Action

Sawyers was also convicted of a Tennessee crime titled "retaliation for past action." "A person commits the offense of retaliation for past action who harms or threatens to harm" an individual involved in the judicial process "by any unlawful act in retaliation for anything" the specified person did in an official capacity. TENN. CODE ANN. § 39-16-510(a)(1). Sawyers argues that this is not a "violent felony." We disagree and affirm the holding of the district court.

Retaliation for past action is a Class E felony which is punishable by a sentence not less than one year in prison. TENN. CODE ANN. §§ 39-16-510(b) and 40-35-111(b)(5). The second requirement is also met because, by harming or threatening to harm someone, the perpetrator presents a serious potential risk of physical injury.

Sawyers relies on *United States v. Sherbondy*, 865 F.2d 996 (9th Cir. 1988), to support his argument that retaliation for past action is not a "violent felony." There, the Ninth Circuit looked at a California statute that made it a crime to prevent or dissuade a witness from testifying by force or threats against a person or property. *Id.* at 1010. The court held that "the use of force against persons 'presents a serious potential risk of physical injury to another,' and . . . the threat of force does also . . . ." *Id.* However, the court found the other prohibited conduct akin to lesser property offenses and, moreover, that the statute gave equal treatment to both types of offenses. *Id.* at 1011. Thus, the court held that, overall, the statute did not present a serious risk of physical injury. *Id.*[13]

Under the Tennessee statute, however, the prohibited conduct only involves threats or force made against *a person*.[14] Thus, under the appropriate reasoning set forth in *Sherbondy*, retaliation

---

[12] The court distinguished *United States v. Shannon*, 110 F.3d 382 (7th Cir.1997)(en banc), its previous en banc decision that found statutory rape of a 13 year old a "crime of violence" under § 4B1.2(a), "because the risk of sex to 13 year old girls is much greater than the risk to 16 year olds." *Thomas*, 159 F.3d at 300 (citations omitted).

[13] Sawyers argues that *Sherbondy* requires that the crime have an element of force in order to be classified as a "violent felony." However, this is an incomplete reading. The *Sherbondy* court did determine that the crime did not have an element of force. However, it then went on to determine if the crime fell within the otherwise clause.

[14] In addition, the Tennessee courts have applied the statute only to situations where physical harm was threatened. *See State v. Brown*, 2003 WL 21673667 (Tenn. Crim. App. 2003)(unpublished disposition)(threatening the life of victim); *State v. England*, 2003 WL 1877234 (Tenn. Crim. App. 2003)(unpublished disposition)(same); *State v. Lanier*, 81 S.W.3d 776 (Tenn. Crim. App. 2000)(threatening to shoot a judge); *State v. Wilson*, 1999 WL 233553 (Tenn. Crim. App. 1999)(unpublished disposition)(threatening people with gun); *State v. Littleton*, 1996 WL 377086 (Tenn.

for past action presents a "serious potential risk of physical injury" and is, categorically, a "violent felony."

## IV.  Sentencing Guidelines

Sawyers first argues that, pursuant to *Blakely v. Washington*, 124 S.Ct. 2531 (2004) the United States Sentencing Guidelines are invalid.  After the parties' briefs were filed, the Supreme Court decided *United States v. Booker*, 125 S.Ct. 738 (2005).  Pursuant to the holding of *Booker*, district courts' analyses under the guidelines have changed in that they are no longer mandatory. *Id.* at 756-57.  However, they have not, as Sawyers contends, been rendered completely invalid.[15] This Court has nonetheless found that a district court commits plain error by treating the guidelines as mandatory.  *See*, *e.g.*, *United States v. Barnett*, 398 F.3d 516, 525-30 (6th Cir. 2005).[16]  Here, Sawyers's sentence has been vacated for the district court to reexamine the applicability of the ACCA.  On remand, the district court can also address the sentencing guidelines in light of *Booker* and the subsequent rulings of this Court.

## V.  Conclusion

For the reasons stated above, Sawyers's conviction is **AFFIRMED**, his sentence is **VACATED**, and the case is **REMANDED** for further consideration.

---

Crim. App. 1996)(unpublished disposition)(threatening the life of victim); *State v. Phipps*, 1996 WL 111341 (Tenn. Crim. App. 1996)(unpublished disposition)(threatening to physically harm victim); *State v. Lindsey*, 1995 WL 544016 (Tenn. Crim. App. 1995)(unpublished disposition)(threatening to shoot victim); *State v. Manning*, 909 S.W.2d 11 (Tenn. Crim. App. 1995)(same).

[15]In addition, the Court notes that sentencing under the ACCA was not rendered invalid by *Booker*.  *United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005).

[16]"Plain error" is the proper standard when a defendant raises the objection for the first time on appeal, as is the case here.  *United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. 2005).